IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Breanne P., | |
| *Plaintiff,* | Case No. 3:23-cv-50369 |
| *v.* | Honorable Michael F. Iasparro |
| Frank J. Bisignano, Commissioner of Social Security, | |
| *Defendant.* | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Breanne P. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her application for disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of March 10, 2019, and with a date last insured of June 30, 2020. R. 193, 88. Following a hearing, an administrative law judge ("ALJ") issued an unfavorable decision in May 2023. R. 17-34. The ALJ found that Plaintiff had the following severe impairments: hypertension; migraine headaches; diabetes mellitus; bipolar I disorder; opioid dependence; and anxiety disorder. R. 20. The ALJ also found that Plaintiff had the following non-severe impairments: mixed hyperlipidemia; obstructive sleep apnea; sinusitis and chronic otitis media; myopia; acute burn to the fourth and fifth fingers of her left hand; and gastroesophageal reflux disease. R. 20-21. Plaintiff's fibromyalgia was found to be non-medically determinable. R. 22-24. The ALJ, in consideration of all Plaintiff's medically determinable impairments, concluded that Plaintiff, as of her date last insured, had the residual functional capacity ("RFC") to perform light work with the following limitations:

> no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; avoid extreme temperatures and workplace hazards, such as unprotected heights and dangerous, moving machinery; understand, remember, and carry out simple and detailed, but not complex, work instructions; able to sustain the necessary attention and concentration in two-hour increments throughout the day to sustain simple job duties assuming typical workday breaks; make simple work-related decisions;

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 9.

respond appropriately to supervision, co-workers, and usual work situations in a routine work setting; and able to deal with occasional changes.

R. 26. The ALJ determined that Plaintiff was unable to perform past relevant work but that she could perform other jobs that existed in significant numbers in the national economy. R. 32.

The Appeals Council denied Plaintiff's request for review on October 3, 2023, making the ALJ's decision the final decision of the Commissioner. R. 1-6; 20 C.F.R. § 404.900(a)(5). Plaintiff then filed this action seeking judicial review. Dkt. 1.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* The court's review of the Commissioner's findings is subject to "a very deferential standard." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). When reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, "we will reverse an ALJ's decision only if the record compels a contrary result." *Thorlton*, 127 F.4th at 1081 (citation modified).

## DISCUSSION

Plaintiff challenges the Commissioner's decision based on four alleged errors the ALJ committed by: (1) refusing to consider evidence generated after the date last insured; (2) improperly finding fibromyalgia to be a non-medically determinable impairment at step two; (3) failing to properly consider Plaintiff's ability to stay on task and comply with the attendance requirements of employment; and (4) failing to build a logical bridge from the evidence to her RFC determination. The Court agrees that the ALJ's step two analysis was flawed and requires remand.

1) The ALJ's Step 2 Analysis

Plaintiff alleges that the ALJ erred at step two when she found fibromyalgia to be a non-medically determinable impairment. Plaintiff argues the ALJ came to this conclusion by misrepresenting medical records and completely failing to address the criteria outlined by the Social Security Administration. Dkt. 13, at *9-11. Conversely, the Commissioner argues that the

ALJ did not err in her step two analysis as she properly considered fibromyalgia and Plaintiff does not meet all of the criteria needed to establish fibromyalgia as a medically determinable impairment (MDI). The Commissioner further contends that any error in the ALJ's analysis at step two was ultimately harmless. Dkt. 16, at *3-6. As discussed in further detail below, the Court finds that the ALJ did not provide substantial evidence for her conclusion that Plaintiff's fibromyalgia was a non-medically determinable impairment, and this error was not harmless.

At step two, an ALJ is tasked with determining whether a claimant has an MDI and, if so, whether that impairment is severe. 20 C.F.R. § 404.1521. The regulations provide that an MDI "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" rather than a claimant's own "statement of symptoms, a diagnosis, or a medical opinion." *Id.* Plaintiff has been diagnosed with fibromyalgia, a disease which often eludes precise description – "[i]ts cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

Recognizing the complexity of this condition, the Social Security Administration has provided guidance for the evaluation of fibromyalgia. *SSR 12-2p: Titles II & XVI: Evaluation of Fibromyalgia*, 2012 WL 3104869 (S.S.A. July 25, 2012). This guidance provides that a claimant can establish fibromyalgia as an MDI if a physician diagnoses them with fibromyalgia, the diagnosis is not inconsistent with the other evidence in the record, and the diagnosing physician provides evidence described in the ruling. *Id.* at *2. This required evidence is based on diagnostic criteria published by the American College of Rheumatology (ACR) in 1990 and, with a few modifications, in 2010. *Id.* The 1990 ACR criteria are as follows: (1) a history of widespread pain; (2) at least 11 positive tender points; and (3) exclusion of other disorders that could explain the positive tender points. *Id.* at *2-3. The 2010 ACR criteria are: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) exclusion of other disorders that could explain the repeated manifestations. *Id.* at *3. An MDI of fibromyalgia can be established with evidence satisfying either set of criteria. *Id.* at *2.

In her step two analysis, the ALJ noted that mention of Plaintiff's fibromyalgia first appeared in 2017 when she visited Dr. Rudolph for medication management. R. 22. The ALJ went on to summarize Plaintiff's treatment of her fibromyalgia (and related symptoms) as follows: in April 2019, Plaintiff complained of back and neck pain to Dr. Raja, a neurologist, but no abnormal findings were noted; in June 2019, Plaintiff was sent to Dr. Hovis, a rheumatologist, for a consult but Dr. Hovis found "no clinical evidence supporting an inflammatory process;" between July and September 2019, Plaintiff saw Dr. Rogers on several occasions but mostly had normal presentation and examinations during these visits; in November 2019, Plaintiff visited Dr. Raja again and complained of numbness and tingling in her hands and feet but again, clinical findings were negative; in December 2019, Plaintiff saw Dr. Razzak for her back pain and abnormal clinical findings supported these allegations; in February 2020, Plaintiff again sought treatment for pain in her back and legs but "examination findings included nothing more than spasms and tenderness in the back;" and finally, in May 2020, Plaintiff visited her primary care physician but had no musculoskeletal complaints. R. 22-23.

Based on these records, the ALJ determined that, "[w]hile fibromyalgia is [an MDI], the claimant has not exhibited the typical clinical signs associated with fibromyalgia, such as multiple

tender points." R. 23-24. This conclusion, and the preceding summary, are insufficient for several reasons. First, the summary misses the mark of how fibromyalgia is to be evaluated. The ALJ clearly understood the usual standard for establishing an MDI "by objective medical evidence" and without considering a claimant's "statement of symptoms." 20 C.F.R. § 404.1521. However, as discussed above, evaluating fibromyalgia must be done differently because of the complexity of the condition. SSR 12-2p explains that an ALJ "must properly consider the person's symptoms when [she] decide[s] whether the person has an MDI of [fibromyalgia]." 2012 WL 3104869, at *2. Thus, the ALJ's conclusion that fibromyalgia was not an MDI because "the typical clinical signs" were missing, with almost no further discussion of what clinical signs were lacking and no clear consideration of Plaintiff's symptoms, does not satisfy the Court that the proper analysis was completed.

Second, the ALJ's summary of the record is insufficient because the ALJ essentially "recite[d] only the evidence that [was] supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record." *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). As summarized above, the ALJ pointed to several examples of Plaintiff's normal presentation and findings at appointments. The ALJ did not, however, note the repeated references to symptoms associated with fibromyalgia. For example, the ALJ explained that Plaintiff's presentation at her June 2019 visit with Dr. Hovis was "completely unremarkable" and noted "there was no evidence of synovitis, swelling, pain, or impaired range of motion in any joint." R. 22. It is accurate that Dr. Hovis found no objective evidence of synovitis pain or impaired range of motion in several joints (although notably not all as the ALJ and the Commissioner claim). R. 584. But at that same appointment, Plaintiff also complained of fatigue, hearing difficulties, chest pain, gastrointestinal issues, dizziness, and nervousness – all symptoms associated with fibromyalgia. R. 583-584. Dr. Hovis assessed Plaintiff as ANA positive (a relevant lab test for fibromyalgia according to SSR 12-2p) and noted "Fibromyalgia." R. 584. This same disregard of Plaintiff's fibromyalgia-related symptoms can be seen in almost every medical note cited by the ALJ. The ALJ acknowledged some of the issues discussed in Plaintiff's appointment in early July 2019, but omitted Plaintiff's reports of fatigue, shortness of breath, arthralgias, and nervousness. R. 23, 590. The ALJ's summary of Plaintiff's visits to Dr. Rogers in late July and August 2019 incorrectly noted that Plaintiff "did not report any ongoing issues with her musculoskeletal system," and completely omitted Plaintiff's complaints of fatigue, shortness of breath, chest pain, and nervousness. R. 23, 603, 615. This "skewed version of the evidence" cannot provide substantial support for the ALJ's step two finding as it "deprived [the Court] of any means to assess the validity of the reasoning process." *Moore*, 743 F.3d at 1123-24.

The ALJ also seems to have misinterpreted several notes from Plaintiff's treating physicians. The ALJ said that Dr. Hovis "opined that there was no clinical evidence supporting an inflammatory process, such as fibromyalgia," even though Dr. Hovis rendered no such opinion. R. 22. In fact, Dr. Hovis ordered further testing, seemingly to get to the root of Plaintiff's pain, and (as noted above) included a fibromyalgia diagnosis in her final assessment. R. 584-85. The ALJ also noted that Plaintiff's physicians "did not describe narcotic pain medications," seemingly to suggest that Plaintiff's fibromyalgia was not severe enough for such treatments. R. 23. In actuality, there does not appear to be any indication that narcotics would be effective in managing Plaintiff's pain and the physician even noted that the clinic "does not provide chronic pain management" but instead referred Plaintiff to a pain management specialist. R. 1385. The ALJ is certainly permitted, and even required, to discuss Plaintiff's treatment. But she cannot draw negative inferences from

a lack of treatment that are not supported in the record. *See Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018).

Further, the ALJ mischaracterized Plaintiff's physical abilities as she reported them to her physicians. The ALJ explained that Plaintiff "reported being quite active by walking daily and bicycling with her daughter" in early September 2019. R. 23. The ALJ also seemed to question Plaintiff's report at her February 2020 appointment that her legs were giving out as she reportedly "walked a mile per day in the summer." R. 23. Neither of these examples reflect an accurate characterization of the evidence. In September 2019, Plaintiff reported that "she does not exercise" but is now walking daily and "*is going to begin* biking with her daughter." R. 631 (emphasis added). That is a far cry from the ALJ's assessment that Plaintiff is "quite active." R. 23. In February 2020, Plaintiff explained that she "*can* walk *up to* a mile a day during summer," not, as the ALJ asserted, that she *did* walk a mile per day. R. 1368 (emphasis added). While these may seem like immaterial distinctions, context matters, and symptoms of fibromyalgia "may vary in severity over time and may even be absent on some days," so Plaintiff's ability to walk a mile on some days is not a reason to disbelieve her complaint of her legs giving out on other days. *SSR 12-2p*, 2012 WL 3104869, at *5; *see also Swiecichowski v. Dudek*, 133 F.4th 751, 759 (7th Cir. 2025) ("Symptoms of fibromyalgia can wax and wane so that a person may have good days and bad days." (citation modified)).

Perhaps most importantly, the ALJ's analysis nowhere specifically referenced SSR 12-2p. Failing to explicitly reference the guidance "by itself is not reversible error" if "the ALJ nevertheless properly applied the requisite analysis." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). But here, the required analysis was not done. As discussed above, SSR 12-2p outlines criteria to establish an MDI of fibromyalgia based on the 1990 and 2010 ACR diagnostic criteria. The only reference the ALJ made to any of these criteria was to the lack of tender points shown in Plaintiff's records. R. 23-24. While this could be read as an implicit reference to the 1990 ACR criteria, the 2010 criteria make no mention of tender points and Plaintiff only had to establish that she met the 1990 criteria *or* the 2010 criteria, not both. Thus, failure to meet one of the 1990 ACR criteria is an insufficient reason on its own to determine that Plaintiff did not establish her fibromyalgia as an MDI.

Both the 1990 and 2010 ACR criteria require documentation of widespread pain, which is defined as "pain in all quadrants of the body and axial skeletal pain." *SSR 12-2p*, 2012 WL 3104869, at *2. The ALJ did not identify whether this criterion was met, and it seems likely that it was, despite the Commissioner's assertion to the contrary, as there is ample support in the record showing the type of widespread pain required. *See, e.g.,* R. 584, 2480 (06/2019 – bilateral shoulder pain, chest pain, abdominal pain, and joint pain); R. 1954 (11/2019 – pain in back, legs, arms, and chest); R. 1377-79 (02/2020 – bilateral hand, back and leg pain). Furthermore, albeit well past the date last insured (an issue briefly discussed below), Plaintiff's rheumatologist opined that Plaintiff's impairments caused pain in her "hands, hips, lumbosacral spine, sacroiliac joints, superior trapezius, and rhomboid." R. 2204.

The second criterion is where the 1990 and 2010 criteria diverge. The ALJ correctly explained that positive tender points were not established in the record, which would be required under the 1990 criteria. R. 24. However, the 2010 criteria replace positive tender points with repeated manifestations of at least six fibromyalgia symptoms, signs, or co-occurring conditions.

*SSR 12-2p*, 2012 WL 3104869, at *3. Among the symptoms and signs that can be considered are fatigue, shortness of breath, frequent urination, nervousness, chest pain, and memory issues (just to name a few). *Id.* at *3 n. 9. The record is replete with references to these exact symptoms. *See, e.g.*, R. 572 (06/2019 – vomiting, fatigue, frequent urination); R. 615 (08/2019 – fatigue, shortness of breath, chest pain, nervousness); R. 718 (12/2019 – fatigue, muscle pain, weakness); R. 1384 (02/2020 – fatigue, chest pain, nausea, memory issues). This criterion also considers repeated manifestations of co-occurring conditions. *SSR 12-2p*, 2012 WL 3104869, at *3 n. 10. Again, the record includes numerous references to these conditions with some even being recognized by the ALJ as MDIs. *See, e.g.*, R. 20-21 (ALJ's discussion of anxiety disorder, migraines, and gastroesophageal reflux disorder); R. 1213, 1874 (ordering medication for irritable bowel syndrome); R. 1285, 1358, 1698 (noting history of depression and chronic fatigue).

Finally, the last criterion requires evidence excluding other disorders that could explain those signs, symptoms, and co-occurring conditions. *SSR 12-2p*, 2012 WL 3104869, at *3. Again, there is at least some evidence that may suggest other disorders were excluded. *See, e.g.*, R. 812 (normal cervical spine MRI[2]); R. 1397 (negative rheumatoid factor); R. 2458 (tests negative for lupus[3] and other autoimmune disorders); R. 1737 (normal CBC, ESR, creatinine, LFTs, CCP, cryoglobulin, vitamin D, TSH, rheumatoid factor, C-reactive protein, Lyme titer).

The Commissioner asserts that this evidence is not enough to satisfy the ACR criteria and establish Plaintiff's fibromyalgia as an MDI. Dkt. 16, at *4. As the ALJ never discussed the ACR criteria, the Court cannot consider the Commissioner's "new findings to rescue the insufficient decision on appeal." *Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022). To be clear, the Court is not deciding that any of these criteria have or have not been established in the record. The Court is simply drawing attention to evidence that the ALJ should have addressed had she completed the SSR 12-2p analysis as required. Without this analysis, it is unclear if this evidence was discredited after proper consideration or if it was simply ignored. *See Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016) ("[W]ithout any analysis from the ALJ, there is no basis for drawing any conclusions about what evidence [s]he considered or overlooked."). And with no such explanation, the Court cannot understand the ALJ's thought process or "assess the validity of the ultimate findings and afford meaningful review." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025).

2) The ALJ's Error was not Harmless

The Commissioner alternatively asserts that any error committed by the ALJ at step two was harmless because the ALJ considered Plaintiff's symptoms in her RFC determination. Dkt. 16, at *5. A careful review of the ALJ's decision does not show this to be true. As discussed above,

---

[2] Oddly enough, the ALJ took note of this normal finding but provided no further analysis and no indication of whether she considered this to be supportive of or contrary to a diagnosis of fibromyalgia. R. 22.

[3] The Court recognizes that Plaintiff is later diagnosed with lupus in contradiction with this note. R. 2195. However, it is the ALJ's responsibility, not this Court's, to determine the significance of this discrepancy. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts, however, is exactly what the ALJ is required to do."); *Warnell*, 97 F.4th at 1052 ("When reviewing a disability decision for substantial evidence, [the Court] will not . . . resolve debatable evidentiary conflicts." (internal quotation marks omitted)).

fibromyalgia is a complex disorder with unknown causes, but it is most notably "characterized by chronic widespread aching and stiffness, involving particularly the neck, shoulders, back, and hips." Fibromyalgia, *Stedmans Medical Dictionary* § 331870, Westlaw (database updated Nov. 2014). Plaintiff's complaints of such pain are well-documented throughout the record and recognized by the ALJ but are not adequately addressed in the RFC analysis. When assessing Plaintiff's physical limitations, the ALJ noted Plaintiff's complaints of chest, back, and abdominal pain. R. 27-29. However, at no point did the ALJ provide any analysis of these symptoms beyond pointing to the lack of objective medical evidence supporting them. In reference to Plaintiff's abdominal and chest pain, the ALJ explained that Plaintiff "maintained completely unremarkable presentations" and "all cardiac testing was negative." R. 28-29. This alone is insufficient as the ALJ may not disregard Plaintiff's symptoms "solely because the objective medical evidence does not substantiate the degree" of pain. *SSR 16-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2017 WL 5180304, at *5 (S.S.A. Oct. 25, 2017).

Furthermore, the ALJ failed to sufficiently analyze Plaintiff's complaints of other types of pain. The ALJ noted that Plaintiff has "a lot of physical pain, especially in her back," and the records show repeated reports of joint pain. R. 28, 68, 584, 590, 742. Notably, the ALJ acknowledged that this back pain was, on at least one occasion, supported by abnormal clinical findings. R. 23. And yet, the ALJ gave no indication of how she considered these symptoms. While the ALJ presumably found this pain to either be exaggerated or not so severe as to cause any limitations,[4] the lack of explanation gives the Court no opportunity to "discern what evidence the ALJ used to reach her conclusion" or "follow the ALJ's reasoning." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 776 (7th Cir. 2022). Thus, the Court cannot find that the ALJ's RFC analysis rendered her error at step two harmless.

3) The ALJ's Consideration of Evidence Subsequent to the Date Last Insured

There also seems to be some dispute between Plaintiff and the Commissioner about how evidence after the date last insured should be considered. Plaintiff believes that the opinion of her rheumatologist dated more than two years after her date last insured should have been considered as it "finds substantial support" in the evidence from the relevant time period. Dkt. 13, at *9. Conversely, the Commissioner argues that the ALJ did not need to consider this evidence because it did not show that "Plaintiff's condition during the relevant period was any different than was already established by the time-relevant evidence."[5] Dkt. 16, at *13. Because this case is being

---

[4] Or perhaps the ALJ dismissed these complaints because, with fibromyalgia ruled out at step two, there was no MDI that could reasonably be expected to cause this type of pain. But if that was the case, the Commissioner's argument that the step two error was deemed harmless by the RFC analysis would fall flat. *See O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) ("Because the new ALJ eliminated depression at Step 2, he did not take into account *any* effects which the disorder might have on O'Connor-Spinner's ability to maintain employment." As that Step 2 decision was in error, "[t]he ALJ thus failed to 'build an accurate and logical bridge between the evidence of mental impairments' and his ultimate conclusion that O'Connor-Spinner remains capable of performing sedentary work.").

[5] Confusingly, the Commissioner goes on to argue that the ALJ was correct to find this opinion unpersuasive at least partially due to the fact that "it was inconsistent with the evidence from the adjudicated period." Dkt. 16, at *13. It cannot possibly be true that this opinion is no different than the evidence from the relevant time period (and therefore does not need to be discussed) but is also inconsistent with evidence from the relevant time period (and thus can be discredited).

remanded to remedy the ALJ's error at step two, the Court does not need to fully address the ALJ's discussion of this later evidence. However, in hopes of avoiding the need for additional appellate review, the Court will simply note that there is no categorical rule that evidence generated after the date last insured is or is not relevant. Rather, "[an ALJ] should consider retrospective medical opinions (created after the date last insured) *that are consistent with past symptoms*." *Marquardt v. Saul*, 798 Fed. App'x 34, 37 (7th Cir. 2020) (emphasis added); *see also Bjornson v. Astrue*, 671 F.3d 640, 642 (7th Cir. 2012) (finding the ALJ was right to consider evidence created after the date last insured because "there was no reason to believe Bjornson's ability to work had declined since then").

## CONCLUSION

Because the Court cannot afford Plaintiff with the meaningful review of the ALJ's step two analysis to which she is entitled, this application must be remanded. In remanding, the Court is not opining that Plaintiff is disabled, that further restrictions need to be included in the RFC, or even that fibromyalgia is a medically determinable impairment. The Court is simply requiring the ALJ to consider "the unique nature of fibromyalgia" and evaluate the evidence in accordance with SSR 12-2p. *Swiecichowski v. Dudek*, 133 F.4th at 759. Plaintiff's counsel should raise any arguments not addressed herein with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise any such issues may result in a waiver if this case is again appealed to this Court.

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion.

Entered: September 24, 2025                    By: _____

                                                        Michael F. Iasparro
                                                        United States Magistrate Judge